UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-22444-CV-MORENO
MAGISTRATE JUDGE REID

ANTONIO L. GREEN,

      Plaintiff,

v.

FRANKLIN PINEDA, et al.,

      Defendants

_____/

## REPORT OF MAGISTRATE JUDGE

### I. Introduction

Plaintiff, **Antonio L. Green,** is confined at the New River Correctional Institution, and has filed a *pro se* Amended Complaint pursuant to 42 U.S.C. § 1983 [ECF 14], and Memorandum of Law [ECF 15], alleging that Defendants at Dade Correctional institution violated Plaintiff's rights under the Eighth Amendment of the United States Constitution. *See* [ECF 14].

This case has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Fla. Administrative Order 2019-2. [ECF 2].

Plaintiff filed his Amended Complaint against the following Defendants:

1)      Plaintiff alleges that Defendant Franklin Pineda ("Defendant Pineda") used excessive force in violation of the Eighth Amendment of the United States Constitution [ECF 14, p. 8, ¶ 74];

2)      Plaintiff alleges in the section of his Amended Complaint, titled "Claims for Relief[,] Count Two, that members of the Cell Extraction Team, John Does #3, #4, #5, #6, #7, and #8 used excessive force in violation of the Eighth Amendment of the United States Constitution [*Id.* p. 8, ¶ 75];[1]

3)      Plaintiff alleges in the section of his Amended Complaint, titled "Claims for Relief[,] Count Three, that Defendants Major Green, Sergeant Burton ("Burton"), Sergeant Riley ("Riley"), Officer Nelson ("Nelson"), Sergeant John Doe #2, and John Does #3, #4, #5, #6, #7, and #8 failed to intervene in the purported use of excessive force against Plaintiff in violation of the Eighth Amendment of the United States Constitution [Id. p. 7, ¶ 76];[2] and,

---

[1] However, in Plaintiff's factual allegations section of his Amended Complaint, he states "[t]hree (3) or four (4) members of the Cell Extraction Team were responsible for this alleged excessive force[,]" and does not list the specific John Doe Defendants allegedly responsible. [ECF 14, p. 7, ¶ 60].

[2] More importantly, in the facts section of Plaintiff's Complaint, Plaintiff does not name the specific John Does, and solely states "[t]he remaining members of the Cell Extraction Team Defendant[s] all stood there and watched without intervening . . . ." [ECF 14, p. 7, ¶ 63].

2

4)   Plaintiff alleges that Defendants Major Green, Burton, Riley, Nelson, Lieutenant D., Jane Doe #1, John Does #3, #4, #5, #6, #7, and #8, Colonel, and Medical Nurse L. Concepcion ("Nurse Concepcion") were deliberately indifferent to Plaintiff's psychiatric needs in violation of the Eighth Amendment of the United States Constitution [*Id*. p. 7, ¶ 77].

Plaintiff has been granted permission to proceed *in forma pauperis* ("IFP") [ECF 7], and is therefore subject to the screening provisions of 28 U.S.C. § 1915(e)(2). *See Farese v. Scherer,* 342 F.3d 1223, 1228 (11th Cir. 2003) ("Logically, § 1915(e) only applies to cases in which the plaintiff is proceeding IFP"). Further, because the Plaintiff is also a prisoner, seeking redress from governmental entities, employees, or officers, his complaint is subject to screening under 28 U.S.C. § 1915A, which does not distinguish between IFP plaintiffs and non-IFP plaintiffs. *See* 28 U.S.C. § 1915A; *see also Thompson v. Hicks*, 213 F. App'x 939, 942 (11th Cir. 2007).

Accordingly, as discussed below, the Undersigned **RECOMMENDS** that Plaintiff's Complaint [ECF 14]:

1)   **PROCEED** against Defendant Pineda as Plaintiff has stated a plausible claim against this Defendant for his purported use of

3

excessive force when he allegedly closed Plaintiff's hand in a feeding flap;

2)  be **DISMISSED** against Defendants Major Green, Burton, Riley, and Nelson for Plaintiff's failure to state a claim upon which relief may granted against these defendants for their alleged failure to intervene in the purported use of excessive force by Defendant Pineda;

3)  be **DISMISSED** against Defendants Major Green, Burton, Riley, Nelson, Lieutenant D., Jane Doe #1, John Does #3, #4, #5, #6, #7, and #8, Colonel, and Medical Nurse L. Concepcion for Plaintiff's failure to state a claim as to their alleged deliberate indifference to Plaintiff's psychiatric needs.

4)  be **DISMISSED** against Defendant Major Green for Plaintiff's failure to state a claim upon which relief may granted as to his alleged failure to intervene in the purported use of excessive force by the Cell Extraction Team Defendants (John Does);

5)  be **DISMISSED WITHOUT PREJUDICE** against Sergeant John Doe #2 and John Does #3, #4, #5, #6, #7, and #8 for their purported use of excessive force and failure to intervene while Plaintiff was in the Medical Room, with leave to amend on or before a date set forth in the Court's pretrial scheduling order, as Plaintiff has not described the John Does with sufficient

4

particularly to allow the Amended Complaint to be served upon the John Does; and,

6)     in summary, be **DISMISSED** against Defendants Major Green, Burton, Riley, Nelson, Lieutenant D., Colonel, Nurse Concepcion, and Jane Doe #1 for failure to state any claims upon which relief may be granted against these Defendants.

## II. Plaintiff's Allegations

Plaintiff claims that the events described below occurred on October 25, 2017, between the hours of 11:00 AM and 2:00 PM, while Plaintiff was confined at Dade Correctional Facility in the in-patient mental health Transitional Care Unit, J-dorm. [ECF 14, p. 4, ¶ 22].

Plaintiff alleges that while he was locked in his cell, J2-109, Defendant Pineda closed his hand in a feeding flap, which caused him pain and suffering. [*Id*. pp. 4-5, ¶¶ 23-35]. Plaintiff contends that he was cut and bleeding as a direct result of Defendant Pineda's actions. [*Id*. p. 5, ¶ 34].

Plaintiff alleges that Defendants Major Green, Burton, Riley, and Nelson, were all present during the alleged incident with Defendant Pineda and that these Defendants failed to intervene. [*Id*. ¶¶ 29-36].

After the alleged incident with Defendant Pineda, Plaintiff alleges that he declared a "psychological emergency" and that Defendants Major Green, Burton,

Riley, and Nelson were deliberately indifferent to Plaintiff's medical needs when they "[f]ailed to provide Plaintiff access to mental health treatment . . . ." [*Id*. ¶¶ 37-38].

Plaintiff alleges that Nurse Concepcion and Defendant Colonel responded to Plaintiff's injuries while he was still in the J-2 wing. [*Id*. p. 6, ¶¶ 46-47]. He contends that he declared a "psychological emergency" for the second time in the presence of these Defendants, and that they were deliberately indifferent to Plaintiff's medical needs by "[i]ntentionally failing to provide Plaintiff access to mental health treatment . . . ." [*Id*].

Plaintiff then alleges that Defendants Major Green, Lieutenant D., Jane Doe #1, and John Does #3, #4, #5, #6, #7, and #8 (Cell Extraction Team Defendants) entered the J-2 wing. [*Id*. p. 6, ¶ 50]. Plaintiff alleges that he declared a psychological emergency for the third time and that these Defendants were deliberately indifferent to Plaintiff's serious medical needs when they "intentionally failed to provide Plaintiff access to mental health treatment." [*Id*. ¶¶ 53-54].

Plaintiff alleges that he was then placed in hand and leg restraints and escorted by the Cell Extraction Team Members (John Does) to the Medical Room. [*Id*. pp. 6-7, ¶¶ 55-57]. Plaintiff contends that while in the Medical Room, Nurse Concepcion

6

cleaned the blood from his cuts with iodine and placed band aids on his injuries. [*Id.* p. 7, ¶ 58].

Plaintiff contends that while in the medical room, Defendant Major Green instructed Jane Doe #1 to shut off the video camera that was in use and stated if Plaintiff "[m]oves, hit him[.]" [*Id.* ¶¶ 59-60].

Plaintiff alleges that three or four members of the Cell Extraction Team (John Does) then entered the medical room, said nothing, and began to "[b]eat, punch, kick and stomp Plaintiff as he fell to the floor in hand and leg restraints." [*Id.* ¶¶ 61-62]. Plaintiff claims that while this beating occurred, Sergeant John Doe # 2, and the remaining members of the Cell Extraction Team (John Does) stood and watched without intervening. [*Id.* ¶ 63].

Plaintiff alleges that Defendant Major Green returned the medical room as "[P]laintiff was yelling and screaming in pain and suffering for help." [*Id.* ¶ 65]. Plaintiff contends that Defendant Major Green then told the Cell Extraction Team Members (John Does) to leave the medical room. [*Id.* ¶ 66]. Plaintiff further alleges that he eventually lost consciousness. [*Id.* ¶ 70].

Lastly, Plaintiff alleges that he was escorted to the emergency room and examined by an unknown medical doctor. [*Id.* pp. 7-8, ¶¶ 72-73].

Plaintiff is seeking "compensatory" and "punitive damages[,]" and a "declaratory judgment[.]" [*Id*. pp. 9-11].

### III. Standard of Review

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a federal right by a person acting under color of state law. *See Griffin v. City of Opa Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001) (citation omitted). Under both 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A, a complaint must be dismissed if the court determines that the complaint fails to state a claim upon which relief can be granted. *See Wright v. Miranda*, 740 F. App'x 692, 694 (11th Cir. 2018). When reviewing the complaint, the court takes the allegations made as true. *See Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).

The same standard is used for dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and § 1915(e)(2)(B)(ii). *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). Thus, the court may dismiss a complaint that fails "[t]o state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

In order to "[a]void dismissal for failure to state a claim, a complaint must contain factual allegations that, when accepted as true, allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Wright*,

740 F. App'x at 694 (citing *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017)) (per curiam). Although, as stated before, a *pro se* pleading is liberally construed, it still must "[s]uggest that there is some factual support for a claim." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Additionally, each separate claim should be presented in a separate numbered paragraph, with each paragraph "limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

Finally, under section 1915(e)(2)(B)(ii), courts must dismiss as frivolous claims that are "[b]ased on an indisputably meritless legal theory . . ." or "[w]hose factual contentions are clearly baseless." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001).

**IV.  Discussion**

Below, in chronological order, are Plaintiff's specific factual allegations and the Court's legal analysis with regards to Plaintiff's claims for excessive force, failure to intervene, and deliberate indifference to Plaintiff's psychiatric needs.

1) <u>Excessive Force: Applicable Law</u>

To establish a claim for excessive force based on a prison official's use of force, the prisoner must show that the official applied the force maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline. *See Hudson v. McMillian*, 503 U.S. 1, 6 (1992).

Courts consider the following non-exhaustive list of factors to determine whether a prison official's use of force on an inmate is malicious and sadistic: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the inmate's injury, if any. *See id.* at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

2) <u>Excessive Force: Legal Analysis</u>

A) *Defendant Pineda*

Plaintiff makes specific factual allegations against Defendant Pineda. [ECF 14, pp. 4-5]. Plaintiff contends that while he was locked in Cell J-2-109, Defendant Pineda "[i]ntentionally started closing the feeding flap with [his] arm and hand still hanging outside the flap[,]" and that this caused him pain and suffering, as he was "[c]ut and bleeding as a direct result of [Defendant] Pineda's unprovoked and unjustified use of excessive force." [*Id.* ¶¶ 23-32]. Plaintiff contends that Defendant

10

Pineda "[s]aid nothing whatsoever to [him] in the form of a direct order to remove his arm and hand . . ." from the feeding flap. [*Id.* p. 5, ¶ 26].

Plaintiff concludes that "[t]he actions of Defendant . . . Pineda in using excessive force against the Plaintiff while he was secured in a cell[,] without need or provocation[,] was done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution." [*Id.* p. 8, ¶ 74].

Plaintiff's allegations support a plausible inference that Defendant Pineda applied force maliciously and sadistically for the very purpose of harming him. In essence, Plaintiff alleges that Defendant Pineda intentionally closed his hand in the feeding flap, causing him injury, even though he posed no threat or exhibited any resistance.

Therefore, Plaintiff has pleaded a facially plausible excessive force claim against Defendant Pineda.

3) <u>Failure to Intervene: Applicable Law</u>

"[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Crenshaw v. Lister*, 556 F.3d 1283, 1293-1294 (11th Cir. 2009).

11

The Eleventh Circuit clarified that liability for failing to intervene in excessive force only arises when the officer observed the alleged excessive force and had both the time and ability to intervene in the purported use of excessive force by his fellow officer. *See Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000).

4) <u>Failure to Intervene: Legal Analysis</u>

*A) Defendants Major Green, Burton, Riley and Nelson*

Plaintiff alleges that as Defendant Pineda intentionally started closing the feeding flap on Plaintiff's arm and hand, Defendants Major Green, Burton, Riley, and Nelson stood there watching "[w]ithout ever saying or doing anything to help." [ECF 14, p. 7, ¶¶ 29-36]. Plaintiff asserts that he was "[c]ut and bleeding as a direct result of Defendant . . . Pineda's unprovoked and unjustified use of force." [*Id.* ¶ 34].

Here it is not clear, whether the above Defendants had the time and ability to intervene in the purported use of excessive force by Defendant Pineda, as Plaintiff does not state how long the alleged incident occurred nor the distance between himself and the Defendants. *See Priester*, 208 F.3d at 927. Moreover, Plaintiff alleges that once Defendant Pineda noticed the Defendants watching him, "[h]e stopped applying force to the feeding flap and walked off." [ECF 14, p. 5, ¶ 32].

12

Accordingly, Plaintiff fails to state a claim upon which relief may granted against Defendants Major Green, Burton, Riley, and Nelson for their alleged failure to intervene in Defendant Pineda's purported use of excessive force.

5) Deliberate Indifference: Applicable Law

The Eighth Amendment prohibits any punishment which violates civilized standards of decency or involves "the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)); *see also Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999).

Accordingly, the Supreme Court has interpreted the Eighth Amendment to prohibit "deliberate indifference to serious medical needs of prisoners." *Estelle,* 429 U.S. at 103. A prisoner's Eighth Amendment right to receive adequate medical treatment also encompasses a right to psychiatric and mental health care, and a right to be protected from self-inflicted injuries. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.,* 402 F.3d 1092, 1115 (11th Cir. 2005).

"However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" *McElligot v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999) (quoting *Estelle*, 429 U.S. at 105).

 "To establish a constitutional deliberate-indifference claim, [Plaintiff] must demonstrate '(1) that [he] had a serious medical need; (2) the [Defendants']

13

deliberate indifference to that need; and (3) causation between that indifference and [Plaintiff's] injury." *See Taylor v. Hughes*, 920 F. 3d 729, 733 (11th Cir. 2019) (quoting *Mann v. Taser, Int'l Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009)). Moreover, a "[P]laintiff must satisfy both an objective and subjective inquiry." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

### a) Serious Medical Need: (First Element)

"A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Mann*, 588 F.3d at 1307 (quoting *Hill v. Dekalb Reg'l Youth Det. Center,* 40 F.3d 1176, 1187 (1994)), *overruled in part on other grounds by Hope v. Pelzer,* 536 U.S. 730, 739 (2002). "In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition. In either case 'the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm.'" *Mann*, 588 F.3d at 1307 (quoting *Farrow*, 320 F.3d at 1243) (internal citation omitted).

### b) Deliberate Indifference to Serious Medical Need: (Second Element)

To establish the second element, that a prison official acted with deliberate indifference to his serious medical need, Plaintiff must show three facts as follows:

"(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Mitchell v. Nobles*, 873 F.3d 869, 876 (11th Cir. 2016) (quoting *Brown*, 387 F.3d at 1351).

The subjective component requires plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to Plaintiff's serious needs. S*ee Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice. *See Farmer*, 511 U.S. at 835-36. Consequently, allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim of cruel and unusual punishment. *See Estelle*, 429 U.S. at 106.

The defendant's conduct must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Nam Dang v. Sheriff, Seminole Cnty.*, 871 F.3d 1272, 1280 (quoting *Rogers v. Evans*, 792 F. 2d 1052, 1058 (11th Cir. 1986)); *see also Hines v. Parker*, 725 F. App'x 801, 804 (11th Cir. 2018).

   c)  *Causation between Indifference and [Plaintiff's] Injury: (Third Element)*

Lastly, in order for a plaintiff to prevail on a deliberate indifference claim on the part of a defendant, plaintiff must demonstrate a causal connection between

defendant's alleged deliberate indifference and plaintiff's injury. *See Harris v. Prison Health Servs.*, 706 F. App'x 945, 953 (11th Cir. 2017) (holding that there was no causal connection where inmate's hematoma and head pain were caused by plaintiff's fall, not by the nurse).

6) <u>Deliberate Indifference: Legal Analysis</u>

A) *Defendants Major Green, Burton, Riley, Nelson, Lieutenant D., Jane Doe #1, John Does # 3, #4, #5, #6, #7, and #8, Colonel, and Nurse Concepcion*

Defendant contends that "[t]he denial of Defendant[s] Major Green, Burton, Riley, Nelson, Lieutenant D., Jane Doe #1, and John Does # 3, #4, #5, #6, #7, and #8, Colonel, and Medical Nurse L. Concepcion in their failure to provide Plaintiff access to mental health treatment when he declared a psychological emergency constituted deliberate indifference to Plaintiff's serious psychiatric needs in violation of the Eighth Amendment of the United States Constitution." [ECF 14, p. 8, ¶ 77].

Plaintiff asserts that after the alleged incident with Defendant Pineda, while Plaintiff was in the J-2 wing, he first declared "a psychological emergency directly to Defendant Major Green in the presence of Defendants . . ." Burton, Riley, and Nelson. [*Id*. p. 5, ¶ 37].

Plaintiff contends that Nurse Concepcion walked over to his cell "[t]o perform a diagram of injury report regarding [his] visible injuries." [*Id*. p. 6, ¶ 49]. Plaintiff

16

alleges that he declared a "psychological emergency" for the second time in the presence of Defendant Colonel and Nurse Concepcion, while Plaintiff was still in his cell in the J-2 Wing. [*Id.* p. 6, ¶ 46].

Plaintiff alleges that after Jane Doe #1 and John Does #3, #4, #5, #6, #7, and #8 (Cell Extraction Team) entered the J-2 wing, he then declared a "psychological emergency" for the third time to Lieutenant D., in the presence of the above Defendants. [*Id.* ¶¶ 53-54].

Plaintiff alleges that he was then placed in leg and hand restraints and escorted by the Cell Extraction Team Members (Jane and John Does) to J-3 wing into J-Dorm hallway, and then to the Medical Room. [*Id.* pp. 6-7, ¶¶ 55-57]. Plaintiff alleges that while in the medical room, Nurse Concepcion began "[t]o clean the blood from [his] cuts with iodine and place[d] band aids on [his] injuries." [*Id.* p. 7, ¶ 58].

Plaintiff has provided only vague and conclusory allegations to support his claims of deliberate indifference to his psychiatric needs. In fact, Plaintiff only states that he declared a "psychological emergency[,]" without providing any description as to what the term "psychological emergency" means, or as to how Defendants were deliberately indifferent to his alleged psychiatric needs. Thus, Plaintiff has provided no allegations that Defendants had a subjective knowledge of a risk of serious harm and disregard of that risk.

Lastly, "[a]lthough [Plaintiff] may not agree with the method of treatment provided, matters of medical judgment do not give rise to a § 1983 claim. *See Fasion v. Rosado*, 129 F. App'x 490. "Where a prisoner has received … medical attention and the dispute is over the adequacy of the treatment, federal courts are hesitant to second guess medical judgments," and find that a constitutional violation has occurred. *Boone v. Gaxiola*, 665 F. App'x 772, 774 (11th Cir. 2016) (quoting *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985)).

Here, Nurse Concepcion noted Plaintiff's injuries. [ECF 14, p. 6, ¶ 49]. Plaintiff was also escorted to the medical room where Nurse Concepcion tended to Plaintiff by cleaning the blood from his cuts with iodine and placing band-aids on his injuries. [*Id*. p. 7, ¶ 58]. Accordingly, although Plaintiff contends that Defendants did not respond to him when he declared a "psychological emergency[,]" he was provided with treatment by Nurse Concepcion in the Medical Room. Moreover, Defendants did not disregard any alleged serious psychiatric risk because they obtained treatment for Defendant by transporting him to the Medical Room. *See Nam Dang,* 871 F.3d at 1280; *see also Watson v. Edelen*, 76 F.Supp.3d 1332, 1348-49, 1375 (N.D. Fla. Jan. 5, 2015) (employees were not deliberately indifferent to inmate's serious mental health needs by failing to notify mental health staff when

18

inmate declared psychological emergency and engaged in self-injurious behavior and instead only took him to the medical department).

Accordingly, Plaintiff fails to state a claim for deliberate indifference as to Plaintiff's psychiatric needs against Defendants Major Green, Burton, Riley, Nelson, Lieutenant D., Jane Doe #1, and John Does # 3, #4, #5, #6, #7, and #8, Colonel, and Nurse Concepcion.

7) <u>Excessive Force & Failure to Intervene: Legal Analysis</u>

A) *Defendants: Members of the Cell Extraction Team (John Does)*

As stated above, Plaintiff contends that he was placed in hand and leg restraints and escorted by the Cell Extraction Team Members (Jane and John Does) from his cell in J-2 wing to the Medical Room where Nurse Concepcion and Sergeant John Doe #2 were waiting. [ECF 14, pp. 6-7, ¶ 57].

Plaintiff contends that while in the Medical Room, Defendant Major Green concluded the medical assessment and directed Defendant Jane Doe #1 to shut off the video camera that had been recording. [*Id*. p. 7, ¶ 59]. Plaintiff asserts that Defendant Major Green stated to Defendant Sergeant John Doe #2, "[i]f he moves, hit him." [*Id*. ¶ 60].

Plaintiff asserts that three or four members of the Cell Extraction Team (John Does) entered the medical room, said nothing, and began to "[b]eat, punch, kick and

19

stomp Plaintiff as he fell to the floor in hand and leg restraints[,]" and that this "unjustified" beating "[c]ontinued non-stop for several minutes[,]" while Sergeant John Doe #2 and the remaining members of the Cell Extraction Team watched. [*Id.* ¶¶ 61-64].

Plaintiff alleges that Defendant Major Green then entered the medical room as Plaintiff was "[y]elling and scream in pain and suffering for help." [*Id.* ¶ 65]. He then alleges that Defendant Major Green told the three of four members of the Cell Extraction Team to leave the room. [*Id.* ¶ 66].

Plaintiff contends that he was subsequently placed in a chair and that he "[e]ventually lost consciousness and fell out of the chair he was sitting on and onto the floor." [*Id.* ¶ 70].

Lastly, he contends that he was awakened by Nurse Concepcion and that Defendants Nurse Concepcion and Sergeant John Doe #2 placed Plaintiff "[o]nto a stretcher and rolled [him] into the Emergency Room where he was "[e]xamined by an unknown medical doctor . . .  for up to 45 minutes to an hour." [*Id.* pp. 7-8, ¶¶ 71-73].

Here, Plaintiff alleges that "[t]he actions of the Cell Extraction Team Defendants, John Does #3, #4, #5, #6, #7 and #8, in using excessive force against the Plaintiff[,] while he was secured in hand and leg restraints[,] without need or

provocation was done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution." [*Id*. p. 8, ¶ 75].

Plaintiff states that "[t]he denial of Defendant Major Green . . . Sergeant John Doe #2, [John Does #3, #4, #5, #6, #7, and #8] in their failure to intervene in the use of excessive force against Plaintiff and/or to take protective measures in response to the obvious known risk of serious harm while being in a position to do so, constituted deliberate indifference to Plaintiff's safety in violation of the Eighth Amendment of the United States Constitution." [ECF 14, p. 8, ¶ 76].

Here, it is unclear as to how many of the Cell Extraction Team Defendants (John Does) and which Defendants were involved in the purported use of excessive force and alleged failure to intervene in the application of excessive force.[3]

Furthermore, the Court entered an Order to Amend, which stated that "Plaintiff needs to describe the John Doe Defendants to the best of Plaintiff's ability, or at least describe the exact time that the John Doe defendants were on duty, for the

---

3 It is important to note that it is not clear as to how many of the Cell Extraction Team Defendants, nor which John Does, were involved in this purported use of excessive force or alleged failure to intervene as Plaintiff states three or four "[C]ell Extraction Team defendants enter[ed] the Medical Room [*Id*. ¶ 61], that "[S]ergeant John Doe # 2 and the remaining members of the Cell Extraction Team Defendant(s) all stood there and watched . . ." [*Id*. ¶ 63], and that Defendant Major Green [told] the three or four Cell Extraction Team Members to leave the Medical Room." [*Id*. ¶ 66].

purposes of serving the Amended Complaint."[ECF 8, p. 6].

In Plaintiff's Amended Complaint, he described the location of the alleged incidents and provided a three-hour time window [ECF 14, p. 4, ¶ 22], however, he did not describe the John Does with enough particularity to serve the Amended Complaint on the John Does, prior to engaging in discovery.

"[C]aselaw generally forbids fictitious-party pleading—that is, claims against fictitious or non-existent parties are usually dismissed." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam). However, there is a "[l]imited exception to this rule when the plaintiff's description of the defendant is so specific as to'" make the fictitious name, 'at the very worst, surplusage.'" *Smith v. Comcast Corp.*, No. 18-13956, 2019 WL 4302867, at *3 (11th Cir. Sept. 11, 2019) (quoting *Richardson*, 598 F.3d at 738).

"[T]he Complaint should state that the name is fictitious and provide an adequate description of some kind which is sufficient to identify the person involved so that process can be served." *See Keno v. Doe,* 74 F.R.D 587, 588 n. 2 (D.N.J. 1977), *aff'd without opinion*, 578 F.2d 1374 (3rd Cir. 1978). Where the Complaint provides a description that is sufficiently clear to allow service or process, it is an abuse of discretion to dismiss the defendant. *See Dean v. Barber*, 951 F.3d 1210, 1216 (11th Cir. 1992) (where plaintiff described with sufficient clarity the head of

Jefferson County Jail as his additional defendant and had yet to receive sheriff's report, which would have provided plaintiff with information needed to specifically name defendant and serve process, court abused its discretion in dismissing defendant).

Where a Plaintiff has not described the John Doe with sufficient particularly to allow the Complaint to be served, the district court is proper in dismissing the claim against the John Doe. *See Richardson*, 598 F.3d at 738 (finding that where Plaintiff identified defendant as "John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institution" in his complaint, district court properly dismissed claim as the description was insufficient to identify defendant among the many guards employed at CCI); *see also Kabbaj v. John Does 1-10*, 600 F. App'x 638, 641 (11th Cir. 2015) (district properly dismissed plaintiff's claims against John Does where plaintiff provided no identifiable information as to John Doe defendants).

However, the initial use of an unnamed defendant is allowed "[w]here discovery would likely uncover that defendant's identity." *Morris v. Hays SP Warden*, 638 F. App'x 880, 881-82 (11th Cir. 2016) (holding district court incorrectly dismissed Plaintiff's complaint as frivolous where missing information as to defendant could be ascertained through discovery and plaintiff provided explanation for not being able to name officer on the Emergency Response Team;

23

members of the Emergency Response Team do not wear tags and prison officials would not provide plaintiff with information to identify the officers).

Here, Plaintiff contends that he "[h]as a total of [eight] defendants listed as Jane and John Does because Plaintiff was unable to identify them by [their] names due to it either being covered up or not on [their] uniforms period [sic]." [ECF 15, p. 3]. Plaintiff further contends that if he "[w]ere allowed to conduct discovery on all the named defendants he would be able to adequately identify most[,] if not all of the . . . John Does involved. [*Id.* pp. 3-4].

Accordingly, because Plaintiff does not describe the John Does with sufficient particularity to allow the Amended Complaint to be served upon the John Does, the Court recommends that any claims against the John Does be dismissed without prejudice, with leave to amend on or before a date that will be set forth in the Court's pretrial scheduling order. *See Williams v. DeKalb Cnty. Jail*, 638 F. App'x 976, 976-77 (11th Cir. 2016) ("A fictitious name …, when the real defendant cannot be readily identified for service, is insufficient to sustain a cause of action.").

8) Failure to Intervene: Legal Analysis

A) *Defendant Major Green*

As stated previously, Plaintiff contends that while in the Medical Room, Defendant Major Green concluded the medical assessment and allegedly directed

24

Defendant Jane Doe #1 to shut off the video camera that had been recording. [*Id*. p. 7, ¶ 59]. Plaintiff asserts that Defendant Major Green stated to Defendant Sergeant John Doe #2, "[i]f he moves, hit him." [*Id*. ¶ 60].

Plaintiff claims that the Cell Extraction Team Defendants then entered the Medical Room and that "[D]efendant Major Green walk[ed] back into the Medical Room as Plaintiff was yelling and screaming in pain and suffering for help [sic]." [*Id*. ¶ 60]. Defendant alleges that Defendant Major Green then told the three or four Defendants of the Cell Extraction Team to leave the Medical Room. [*Id*. ¶ 66].

He further alleges that Defendant Major Green directed Jane Doe #1 to turn on the hand-held video camera, that was turned off directly prior to the alleged beating. [*Id*. ¶ 67]. Plaintiff contends that Defendant Major Green then stated, "[a]s soon as I walked out of the room, he moved." [*Id*. ¶ 68].

"[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Crenshaw v. Lister*, 556 F.3d 1283, 1293-1294 (11th Cir. 2009).

The Eleventh Circuit clarified that liability for failing to intervene in excessive force only arises when the officer observed the alleged excessive force and had both

the time and ability to intervene in the purported use of excessive force by his fellow officer. *See Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000).

Here, Plaintiff has only provided vague and conclusory allegations as to Defendant Major Green's alleged failure to intervene in any purported application of excessive force. It appears that Defendant Major Green was not present during the alleged application of excessive force, and thus could not have intervened in the purported use of excessive force. *See Priester*, 208 F.3d at 927. Moreover, it is not clear when Defendant Major Green left the Medical Room. Further, it appears that Defendant Major Green did instruct the Cell Extraction Team Members (John Does) to leave the Medical Room upon his discovery of Plaintiff "[y]elling and screaming in pain and suffering for help" [ECF 14, p. 7, ¶¶ 65-66].

Accordingly, Plaintiff has failed to state a claim upon which relief may be granted against Defendant Major Green for his alleged failure to intervene in the purported application of excessive force by the Cell Extraction Team Members (John Does).

## V.  Punitive Damages Claim

Plaintiff seeks $25,000.00 in punitive damages against Defendants Pineda, Major Green, Burton, Riley, Nelson, Jane Doe #1, Sergeant John Doe #2, John Does #3, #4, #5, #6, #7, and #8, Colonel, and Nurse Concepcion. [ECF 14, p. 11]. Punitive damages may be awarded under § 1983 when the defendant's conduct is shown to

be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56 (1983).

"While the *Smith* Court determined that it was unnecessary to show actual malice to qualify for a punitive award, ... its intent standard, at a minimum, required recklessness in its subjective form." *Kolstad v. American Dental Ass'n,* 527 U.S. 526, 536 (1999). *Smith* refers to a "subjective consciousness" of a risk of injury or illegality and a "criminal indifference to civil obligations." *Smith,* 461 U.S. at 45-48 (quoting *Philadelphia, W. & B.R. Co. v. Quigley,* 62 U.S. 202, 214 (1858)).

Punitive damages should not be awarded against Defendants Burton, Riley, Nelson, Jane Doe #1, Defendant Major Green, and Nurse Concepcion as Plaintiff has failed to state a claim upon which relief may be granted against these Defendants. However, at this early juncture, since it cannot be determined whether punitive damages should be awarded against Defendant Pineda arising from the facts alleged, the punitive damage claim should proceed against Defendant Pineda.

Here, the Court recommends dismissal without prejudice against the John Doe Defendants, Sergeant John Doe #2 and John Does #3, #4, #5, #6, #7, and #8, because Plaintiff has not described these Defendants with sufficient particularly to allow the Amended Complaint to be served upon them. Thus, the punitive damage claim

against the John Doe Defendants should be dismissed without prejudice, with leave to amend on or before a date to be set forth in the Court's pretrial scheduling order.

## VI.  Plaintiff's Request for Declaratory Relief

Plaintiff is also requesting that the Court "[i]ssue a declaratory judgment. stating . . ." as follows:

(1) "[t]he physical abuse of the Plaintiff by Defendant[s] Franklin Pineda, John Doe #3, [#4, #5, #6, #7, and #8] violated the Plaintiff's rights under the Eighth Amendment of the United States Constitution";

(2) "Defendants Major Green, Sergeant Burton, Sergeant Riley, Officer Nelson, Lieutenant D., Jane Doe #1, [John Doe's #3, #4, #5, #6, #7, and #8] fail[ed] to intervene in the use of excessive force against the Plaintiff and/or take reasonable protective measures in response to the obvious known risk of serious harm while being in a position to do so, constituted deliberate indifference to Plaintiff's safety in violation of the Eighth Amendment of the United States Constitution"; and,

(3) "[t]he denial of Defendant[s] Major Green, Sergeant Burton, Sergeant Riley, Officer Nelson, Lieutenant D., Jane Doe #1, [John Doe's #3, #4, #5, #6, #7, and #8,] in their failure to provide Plaintiff access to mental health treatment when he declared a psychological emergency constituted deliberate indifference to his serious psychiatric needs in violation of the Eighth Amendment of the United States Constitution."

As to Plaintiff's request for declaratory relief, it is axiomatic that federal courts may only hear live "cases" or "controversies." U.S. Const. art. III, § 2. "If events that occur subsequent to the filing of a lawsuit . . . deprive the court of the ability to give the plaintiff . . . meaningful relief, then the case is moot and must be dismissed." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1183 (11th Cir. 2007) (quoting *Troiano v. Supervisor of Elections*, 382 F.3d 1276, 1281-82 (11th Cir. 2004)) (omission in original).

Unlike claims for monetary relief, claims for declaratory relief are prospective in nature, and are intended to prevent future injuries. *See Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277, 131 (2011). "When the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury." *Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997).

Accordingly, absent class certification, "[t]he general rule . . . is that a transfer or release of a prisoner from prison will moot that prisoner's claims for . . . declaratory relief." *Smith*, 502 F.3d at 1267, *abrogated on other grounds by Sossamon*, 502 F.3d at 1267 (citing *Mckinnon v. Talladega Cnty. Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984); *see also Spears v. Thighpen*, 846. F.2d 1327, 1328

29

(11th Cir. 1988) (explaining that an inmate's § 1983 claim for injunctive and declaratory relief are moot once the inmate has been transferred); *see also Rau v. Moats*, 772 F. App'x 814, 817 (11th Cir. 2019).

Plaintiff is currently confined at New River Correctional Institution, and is no longer confined at Dade Correctional Institution, the institution where the alleged attack occurred. Thus, the relief sought by Plaintiff to prevent future harm to him at the hands of the Defendants, should be dismissed as moot.

Accordingly, Plaintiff has not demonstrated the necessary requisite for the Court to enter a declaratory judgment as to any claims that Defendants Pineda, Sergeant John Doe #2, and John Does #3, #4, #5, #6, #7, and #8 violated Plaintiff's rights under the laws and Constitution of the United States as there is no prospective threat of future injury.

Moreover, as to Defendants Major Green, Burton, Riley, Nelson, Lieutenant D., and Jane Doe #1, Plaintiff has failed to state any claims upon which relief may be granted against these Defendants. Therefore, Plaintiff has not demonstrated the necessary requisite for the Court to enter a declaratory judgment against these Defendants.

## VII. Conclusion

At this early stage, all that is required to avoid dismissal for failure to state a claim is that the complaint "must contain factual allegations that, when accepted as true, allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Wright*, 740 F. App'x at 694 (citing *Waldman*, 871 F.3d at 1289). To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show that he was deprived of a federal right by a person acting under color of state law. *See Griffin*, 261 F.3d at 1303.

## VIII. Recommendations

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's Amended Complaint [ECF 14]:

1) **PROCEED** against Defendant Pineda as Plaintiff has stated a plausible claim against this Defendant for his purported use of excessive force when he allegedly closed Plaintiff's hand in a feeding flap;

2) be **DISMISSED** against Defendants Major Green, Burton, Riley, and Nelson for Plaintiff's failure to state a claim upon which relief may granted against these defendants for their alleged failure to intervene in the purported use of excessive force by Defendant Pineda;

3) be **DISMISSED** against Defendants Major Green, Burton, Riley, Nelson, Lieutenant D., Jane Doe #1, John Does #3, #4, #5,

#6, #7, and #8, Colonel, and Medical Nurse L. Concepcion for Plaintiff's failure to state a claim as to their alleged deliberate indifference to Plaintiff's psychiatric needs.

4)      be **DISMISSED** against Defendant Major Green for Plaintiff's failure to state a claim upon which relief may granted as to his alleged failure to intervene in the purported use of excessive force by the Cell Extraction Team Defendants (John Does);

5)      be **DISMISSED WITHOUT PREJUDICE** against Sergeant John Doe #2 and John Does #3, #4, #5, #6, #7, and #8 for their purported use of excessive force and failure to intervene while Plaintiff was in the Medical Room, with leave to amend on or before a date set forth in the Court's pretrial scheduling order, as Plaintiff has not described the John Does with sufficient particularly to allow the Amended Complaint to be served upon the John Does; and,

6)      in summary, be **DISMISSED** against Defendant Major Green, Burton, Riley, Nelson, Lieutenant D., Colonel, Nurse Concepcion, and Jane Doe #1 for failure to state any claims upon which relief may be granted against these Defendants.

The Court also recommends that Plaintiff's Motion requesting that service be made on all named Defendants [ECF 17], be **GRANTED IN PART** as to Defendant Pineda, be **DENIED IN PART** as to Defendants Major Green, Burton, Riley,

32

Nelson, Lieutenant D., Jane Doe #1, Colonel, and Nurse Concepcion, and be

**DENIED IN PART WITHOUT PREJUDICE** as to Sergeant John Doe #2 and

John Does #3, #4, #5, #6, #7, and #8.

Objections to this report may be filed with the District Court within fourteen

days of receipt of a copy of the report. Failure to do so will bar a *de novo*

determination by the district court judge of anything in the recommendation and will

bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28

U.S.C. § 636(b)(1)(C); *see also Thomas v. Arn,* 474 U.S. 140, 149 (1985).

**SIGNED** this 9th day of December, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

cc:    **Antonio L. Green**
       981309
       New River Correctional Institution
       Inmate Mail/ Parcels
       PO Box 900
       Raiford, FL 32083
       PRO SE